836 P.2d 536

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gary HIGGINS, Defendant–Appellant.**

No. 17241.

Supreme Court of Idaho.
Boise, May 1992 Term.

Aug. 10, 1992.

Blaser, Sorensen & Hansen, Chartered, Blackfoot, for defendant-appellant. Scott H. Hansen, argued.

Larry EchoHawk, Atty. Gen., and Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent. Jack B. Haycock, argued.

JOHNSON, Justice.

This is a criminal case involving convictions for six counts of rape, two counts of incest, and one count of lewd conduct with

a minor. Two trials were held. In the first trial, the jury could not reach a unanimous verdict, and the trial court declared a mistrial. In the second trial, the jury found the defendant guilty of all nine counts. We affirm.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Prior to the first trial, the defendant, Gary Higgins, made a request for discovery which included a request for "any written or recorded statements made by the victims or any witnesses or any other parties which were interviewed or talked to by the [state] or [its] agents which may have any relevancy to the matter." The state filed a response that listed a tape recorded interview of the alleged victim as an item of tangible evidence. Attached to the state's response was a police report that listed two video tapes under the category of physical evidence. The police report also contained this handwritten notation: "[The alleged victim] was video taped with her consent." The state included the transcript of one of the video-taped interviews of the alleged victim with the state's response to discovery.

The first trial took place in the fall of 1986. Following a mistrial because the jury could not agree on its verdict, the district judge who conducted the first trial retired. The new district judge ordered that a new trial begin in April 1987. Higgins' attorney in the first trial withdrew, and the trial court appointed a public defender to represent Higgins. The new defense attorney filed motions for a continuance and requesting a transcript from the previous trial. The trial court granted the continuance. Counsel for the parties stipulated that only the testimony of Higgins and the alleged victim be transcribed, and the trial judge ordered that these parts of the transcript be prepared.

On the day Higgins' second trial was to begin, Higgins' attorney filed a motion in limine to exclude the testimony of one of the state's witnesses, an expert in sexual abuse. The motion stated:

To allow [the expert] to testify as to the truthfulness of the alleged victim would, in fact, take away the obligation and rights of the jury to make that decision and invade their duties and rights.

This defense motion also challenged the admission of evidence of uncharged bad acts.

The trial court allowed the state's sexual abuse expert to testify concerning background material to help the jury generally understand the area of child sexual abuse. The trial court refused to allow Higgins' evidence regarding his polygraph, hypnosis, and truth serum results, stating that this evidence lacked sufficient scientific reliability. The trial court also ruled that the state could present evidence of uncharged prior bad acts under an exception to I.R.E. 404 because this evidence would have "probative value of [Higgins'] motive, intent and inclination." The trial court, apparently referring to evidence of prior, uncharged acts, then stated, "However, I'm going to limit it to what was admitted in the last trial."

In the second trial, the jury returned a verdict of guilty on all nine counts. Following a presentence investigation and a sentencing hearing, the trial court sentenced Higgins to two indeterminate terms of eight years for each of the two incest counts, and seven indeterminate terms of twenty years for each of the other counts. The trial court ordered the sentences to run concurrently.

Higgins filed two motions for new trial. In the second motion for new trial, Higgins argued that the trial court in the second trial improperly admitted evidence that had been excluded at the first trial after promising to follow the evidentiary rulings of the judge in the first trial. Higgins also asserted that the trial court improperly allowed the testimony of the state's sexual abuse expert, because the testimony was more prejudicial than probative.

Sometime after the second motion for new trial, counsel for Higgins discovered that the state had in its possession two

video tapes of interviews of the alleged victim. State social workers and law enforcement personnel made these tapes in August 1985 (the 1985 video tape), and in January 1986 (the 1986 video tape). Higgins filed an amended motion for new trial in March 1990. In this motion, counsel for Higgins argued: (1) Higgins had requested all information like these video tapes, (2) the state had failed to disclose the existence of the tapes, (3) the tapes were exculpatory in nature, and (4) Higgins' access to these tapes would have substantially changed the outcome of his trial.

The trial court ruled that the state had substantially complied with Higgins' discovery request because:

1. The state's response to discovery listed a tape recorded statement by [the alleged victim] as an item of tangible evidence.

2. The state provided a transcript of the January 1986 video tape to defense counsel with the state's response to discovery.

3. A police report attached to the response to discovery listed "two video tapes" as tangible evidence. The report also stated that "[the alleged victim] was video taped with her consent."

The trial court noted that Higgins "did not specifically request either a more detailed description or a copy or transcript of the video tapes. In fact, defense counsel concedes that he did not read the one transcript provided." The trial court also noted:

By affidavit, attorneys for both the [state] and [Higgins] in the first and second trials state that they did not know of the existence of the two video taped interviews. Apparently none of the attorneys reviewed in detail the police reports and the statements and interview material.

The trial court concluded that while defense counsel could have used the videos to attempt to impeach the alleged victim, the video tapes would not have created a reasonable doubt as to Higgins' guilt. The

trial court refused to grant a new trial based on the video tapes.

In addressing Higgins' claim that the trial court improperly admitted certain evidence after promising to follow the evidentiary rulings from the first trial, the trial court pointed out that defense counsel in the second trial made no specific objections to the admission of the evidence in question when that evidence was offered. The trial court concluded that admission of this evidence was not a basis for the granting of a new trial.

Concerning the admission of the testimony of the state's sexual abuse expert, the trial court ruled that the testimony was properly admitted and could not be the basis for ordering a new trial. The trial court said that the expert testified generally regarding "the child abuser profile," but did not evaluate Higgins' conduct in light of that profile, and "never related [the expert's] testimony to Higgins, in particular, at all." Therefore, the trial judge concluded that the expert's testimony was admissible.

Following the trial court's denial of a motion to reconsider its decision, Higgins appealed his convictions to this Court.

## II.

### THE TRIAL COURT DID NOT PROMISE BUT FAILED TO FOLLOW CERTAIN EVIDENTIARY RULINGS FROM THE FIRST TRIAL.

Before the second trial started, Higgins filed a motion in limine requesting the trial court to exclude certain evidence that he anticipated the state would try to present during the trial. The evidence Higgins sought to exclude included the testimony of two witnesses "as to any matters which occurred prior to 1985." Higgins' motion in limine continued:

The basis of this Motion is that such prior alleged sexual conduct of the Defendant could be of high prejudicial nature that to allow such extraneous testimony will insight [sic] the minds of the jury, has very little probative value because of the age of such purported evi-

dence and, in fact, is very difficult if not impossible to refute because of the length of time since the incidences [sic] which will be attempted to be testified by the parties.

In ruling on the part of Higgins' motion regarding prior sexual conduct, the trial court stated:

> I have looked at [I.R.E. 401]. I've looked at [I.R.E. 404(b)]. Concerning evidence not admissible to prove conduct of other crimes, and related matters. And again, I think it's soundly within the discretion of the trial court. I think we have to look at the probative value as weighed to the prejudicial effect of it. [Higgins] points out that it could be very prejudicial. It appears to the court that it is relevant.
>
> . . . .
>
> There, of course, is a limit. I've reviewed the minute entries and the briefs filed in the prior trial, and prior hearing. The court is going to deny [Higgins'] motion. For all practical purposes, I think, so there's no misunderstanding where the court stands. I do think that the testimony [concerning prior sexual misconduct] has probative value. It falls within the exception of Rule 404 of the Idaho Rules of Evidence. It's within the discretion of the trial court to admit it, for its probative value to help the jury.
>
> However, I'm going to limit it to what was admitted in the last trial. I know [the first trial judge] spent quite a bit of time analyzing the evidence. I have a lot of respect for [the first trial judge's] legal abilities. In addition to that, on my own, I have made my own independent search. So based on my own independent decision, that evidence will be admissible in line with what it was in the last trial. And I caution counsel for the State and for [Higgins] that I will be very disappointed in both of you gentlemen, should any evidence beyond what was admitted in the last trial, be presented to the jury. I believe the jury will have enough difficult problems sorting out evidence without going into things that the court feels is either . . . too prejudicial . . . [or] beyond the scope of what is relevant, without getting into the area of being highly prejudicial.

■ On appeal, Higgins argues that this statement by the trial court constituted a promise by him to follow all of the evidentiary rulings of the judge in Higgins' first trial. Higgins contends that the trial court later improperly admitted testimony regarding an incident in which Higgins burned a witness's hand with an iron, and testimony that Higgins hit his wife to induce a miscarriage after learning of her infidelity. Higgins asserts that the trial judge should not have admitted this evidence because he promised to follow all of the evidentiary rulings of the first trial judge. We disagree.

Higgins' motion in limine asked the trial court to exclude evidence of "prior alleged sexual conduct of the Defendant." In ruling on Higgins' motion, the trial court did not make a promise to follow every evidentiary ruling from Higgins' first trial. Rather, the trial court stated that it would admit the limited testimony of two specific witnesses, which the first trial judge had admitted regarding Higgins' prior sexual misconduct. Higgins' motion in limine did not request the trial court to follow every evidentiary ruling from Higgins' first trial, nor did the trial court promise to do so.

■ At trial, the state did not offer the testimony of Higgins' prior bad acts, but did present evidence during cross-examination of Higgins that Higgins burned a witness's hand with an iron. The state presented this evidence to impeach Higgins after he testified on direct examination that he had only hit or spanked the witness. During his case in chief it was Higgins, not the state, who presented evidence of Higgins' wife's infidelity and her opinion that Higgins had induced a miscarriage by striking her womb. Therefore, because Higgins either offered the challenged testimony himself or opened the door for the state to do so, the admission of this evidence does not provide a basis to overturn the convictions.

## III.

HIGGINS DID NOT PRESERVE THE RIGHT TO RAISE ON APPEAL WHETHER THE TRIAL COURT VIOLATED I.R.E. 404(A) BY ADMITTING THE TESTIMONY OF THE STATE'S CHILD ABUSE EXPERT CONCERNING THE PROFILE OF AN OFFENDER IN AN INCESTUOUS FAMILY TO SHOW THAT HIGGINS FIT THIS PROFILE.

Higgins asserts that the trial court violated I.R.E. 404(a)(1) by allowing the state's child abuse expert to testify concerning the profile of an offender in an incestuous family for the purpose of showing that Higgins fit this profile. Higgins contends that the effect of the expert's testimony was to corroborate improperly the testimony of the alleged victim. We do not address this issue, because Higgins did not preserve it for appeal by an objection in the trial court.

I.R.E. 404(a) provides that "[e]vidence of a person's character or a trait of [the person's] character is not admissible for the purpose of proving that [the person] acted in conformity therewith on a particular occasion." There is an exception to this rule in the case of "[e]vidence of a pertinent trait of [the accused's] character offered by an accused, or by the prosecution to rebut" character evidence offered by the accused. I.R.E. 404(a)(1).

In support of his position, Higgins cites *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988), for the proposition that evidence of general traits of child abusers together with evidence of character traits of an accused is inadmissible if offered to show that a particular defendant acted in conformity with those character traits. Higgins did not, however, preserve his right to raise this alleged error on appeal.

■ While it is true that Higgins moved in limine to prevent the state from presenting the testimony of the child abuse expert, the grounds stated for the motion did not request exclusion of the testimony on the basis of I.R.E. 404(a). In *Hester*, the Court reaffirmed that where the trial court has denied a motion in limine, failure to renew the objection at trial will not ordinarily constitute a waiver of the issue on appeal. In *Hester* we pointed out that if a motion in limine has been made and denied, defense counsel need not repeat the objection when the evidence is offered during the trial. 114 Idaho at 699, 760 P.2d at 38.

In this case, Higgins' motion in limine requested the trial court to prohibit the state's expert "from testifying at the time of the trial because [the expert's] testimony will be conclusionary in nature as to the believability and truthfulness of the alleged victim." The only place in the transcript where Higgins' attorney elaborates on the grounds for this part of the motion in limine refers to the testimony as being so general that it would not be relevant and as not being technical enough to permit the expert to testify. Therefore, by his motion in limine, Higgins did not preserve the right to raise the issue of the impropriety of expert's testimony under I.R.E. 404(a).

■ At trial, Higgins' attorney did not object to the testimony of the state's expert concerning the profile of an offender in an incestuous family. Any error in admitting the testimony was not fundamental error, because it dealt with the admission of evidence and did not go to the foundation of the case or take from Higgins a right that was essential to his defense. *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989).

■ In deciding Higgins' motion for new trial the trial court stated that one of the grounds upon which Higgins sought a new trial was that "[t]he trial court incorrectly admitted testimony by an expert pertaining to the 'child abuser profile.'" A motion for new trial based on the admission of evidence to which the moving party did not object at trial, however, is not a sufficient means of preserving the issue for appeal. If it were, all objections could be reserved until post-trial motions and raised then for the first time. This would amount to the repeal of I.R.E. 103(a), which provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) ... In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

Because Higgins' has not preserved the issue of the propriety of the testimony of the state's expert concerning the profile of an offender in an incestuous family, we do not address the issue on appeal. *See Hester*, 114 Idaho at 700, 760 P.2d at 39.

## IV.

### HIGGINS DID NOT ESTABLISH THAT THE PROSECUTION IMPROPERLY "COACHED" THE ALLEGED VICTIM.

Higgins asserts that the prosecutor improperly "coached" the alleged victim in preparation for the alleged victim's testimony at trial. Higgins points out that the alleged victim's story regarding Higgins' alleged sexual abuse changed dramatically from the time she first reported the abuse in August 1985 until she testified at the trial. Higgins contends that the alleged victim's "progressive" memory demonstrates that the state improperly influenced her testimony. Higgins cites *State v. Wright*, 116 Idaho 382, 385, 775 P.2d 1224, 1227 (1989), *aff'd*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), for the proposition that "[e]ven adults' memory can be tainted to the point that their actual testimony is deemed too unreliable to be admitted without offense to due process."

While Higgins correctly argues that it would be improper for the prosecution to help witnesses confabulate testimony, Higgins has presented no evidence that the prosecution improperly influenced the alleged victim's testimony. The record shows that counsel for Higgins had an ample opportunity to cross-examine and impeach the alleged victim regarding her different accounts of his conduct. In the absence of any evidence that the state influenced the alleged victim's testimony, we reject Higgins' argument regarding improper coaching.

## V.

### THE PROSECUTOR'S FAILURE TO DISCLOSE THE VIDEO TAPES OF THE INTERVIEWS WITH THE ALLEGED VICTIM DID NOT DEPRIVE HIGGINS OF A FAIR TRIAL.

Higgins asserts that the prosecutor's failure to produce the 1985 and 1986 video tapes violated his right to a fair trial. We disagree.

In analyzing the effect of the prosecutor's alleged nondisclosure of the video tapes, the trial court first concluded that the prosecutor had substantially complied with I.C.R. 16 by giving Higgins a police report listing the two videos and a transcript of the 1986 video. The trial court reviewed the content of the video tapes in the context of the entire record to determine if the videos created a reasonable doubt of Higgins' guilt that did not otherwise exist, citing *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342, 354–55 (1976). The trial court concluded that in the context of the entire record, neither of the video tapes satisfied the materiality test of *Agurs* because they did not create a reasonable doubt that did not otherwise exist.

In making this analysis, the trial court relied on *State v. Aragon*, 107 Idaho 358, 690 P.2d 293 (1984). *Aragon* was decided prior to *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In *Bagley*, the Supreme Court formulated a new materiality test. After reviewing the two different materiality tests the Court had employed in *Agurs* and in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court concluded that whether there was no request, a general request, or a specific request by the defense for the prosecution to disclose evidence favorable to the accused, the materiality test is the same:

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is

a probability sufficient to undermine confidence in the outcome.

473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

■ We agree with the trial court that the prosecution substantially complied with I.C.R. 16 with respect to the 1986 video tape by furnishing a transcript of the tape. We view, however, the disclosure of the 1985 video tape differently.

■ I.C.R. 16(b)(6) requires the prosecuting attorney to "furnish upon written request the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney or his agents or to any official involved in the investigatory process of the case." The reference to "two video tapes" on a police report does not substantially comply with I.C.R. 16 with regard to the 1985 tape. Therefore, we must determine whether the nondisclosed 1985 video tape was material under the *Bagley* test.

■ In the 1985 video tape, the alleged victim stated that Higgins had performed "just fondling" from the time the alleged victim was four years old, and that all sexual contact stopped when the alleged victim was fourteen. All of the crimes of which Higgins was convicted occurred between the time the alleged victim was fifteen and eighteen years old.

The alleged victim also stated in the 1985 video tape that there was never any oral sex and no intercourse between Higgins and the alleged victim. At trial, however, the alleged victim testified that Higgins had intercourse with her, and had forced the victim to perform oral sex on him.

The trial court reasoned that these video taped statements by the alleged victim would not have affected the outcome of the trial because the sexual abuse expert's testimony corroborated the alleged victim's gradual disclosure pattern, and because the state's medical expert corroborated the alleged victim's accusations of sexual penetration.

In determining whether there is a reasonable probability that the prosecution's disclosure of the 1985 video tape would

have changed the result of the second trial, we have considered the evidence presented in the trial, especially the direct examination and cross-examination of the alleged victim. If the contents of the 1985 video tape had materiality, it was to provide a basis to impeach the credibility of this witness.

The testimony of the alleged victim was very persuasive. She testified with great particularity about the conduct for which Higgins was convicted. No doubt a skillful cross-examiner could have used the 1985 video tape to some advantage in attempting to cast doubt on the credibility of the alleged victim. In our view, however, the degree of probability that the use of the 1985 video would have convinced the jury that the alleged victim was not telling the truth is not sufficient to undermine our confidence in the jury's verdict. Therefore, we conclude that under *Bagley* the 1985 video tape was not material.

## VI.

HIGGINS' AGREEMENT TO HAVE A PARTIAL TRANSCRIPT FROM THE FIRST TRIAL PRECLUDES HIS ARGUMENT THAT THE STATE IMPROPERLY FAILED TO PROVIDE A FULL TRANSCRIPT.

■ Higgins asserts that the state prejudiced Higgins' right to a fair trial in the second trial by failing to provide the defense with a complete transcript from the first trial, and that the lack of a transcript prevented the defense from adequately preparing for the second trial. We disagree, because Higgins agreed to the preparation of a partial transcript.

Prior to the second trial, Higgins moved for a copy of the transcript from the first trial. In granting Higgins' motion, the trial court issued the following order:

Upon stipulation of counsel for the preparation of *portions* of the transcript of the proceedings in [the first trial] and good cause appearing,

IT IS HEREBY ORDERED that a *transcript of the trial testimony of [the alleged victim] and Gary Higgins* be

prepared by the Official Court Reporter at the expense of Bingham County. (Emphasis added.)

Although the record does not include a stipulation by counsel for the transcription of only portions of the record, the trial court's order for the transcript and the actions of Higgins' attorney in the second trial indicate that Higgins agreed to receive only part of the transcript from the first trial. During a discussion of preliminary matters before the start of the second trial, the following exchange occurred:

[THE COURT]: Now, I also point out for our record that the evidence that was given in the last hearing that both the [prosecutor] and [Higgins] have copies of that testimony, is that correct, gentlemen?

[HIGGINS' ATTORNEY]: That's correct.

[THE PROSECUTOR]: Yes, Your Honor.

In this exchange, the defense attorney implicitly acknowledged that the partial transcript was adequate. In addition, Higgins' attorney never objected to receiving only a partial transcript from the first trial. Therefore, we conclude that the state did not violate Higgins' right to a fair trial by failing to provide a full transcript.

## VII.

## HIGGINS FAILED TO MAKE TIMELY OBJECTIONS TO REBUTTAL EVIDENCE OFFERED BY THE STATE AND AN ALLEGEDLY IMPROPER STATEMENT IN THE PROSECUTOR'S CLOSING ARGUMENT.

█ Higgins asserts, for the first time on this appeal, that the trial judge improperly admitted the testimony of Carolyn Roberts, who testified using notes taken at Higgins' first trial as a rebuttal witness to impeach the testimony of one of Higgins' witnesses. Higgins also claims that the prosecutor made an improper statement during closing argument. Higgins' has failed to preserve these issues on appeal because his attorney failed to object to

either of these alleged errors. *See State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980).

In general, the only exception to this rule is when the alleged error was fundamental. In *Bingham,* the Court said:

Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive.

116 Idaho at 423, 776 P.2d at 432 (*quoting Smith v. State,* 94 Idaho 469, 475 n. 13, 491 P.2d 733, 739 n. 13 (1971)).

█ Even if the trial court abused its discretion in admitting Roberts' testimony, this error would not have been fundamental. As this Court said in *Bingham:* "An abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his defense." *Id.* at 423, 776 P.2d at 432. Even if Higgins' counsel would have objected to the admission of this evidence on hearsay grounds, the trial court could have properly used its discretion to allow Roberts' testimony and the reading of her notes into the record under I.R.E. 803(5):

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable [the witness] to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in [the witness's] memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

During Roberts' testimony, the prosecutor established that Roberts had taken notes at Higgins' first trial, that she believed her notes to be accurate, and that she had no independent recollection of the testimony at Higgins' first trial without the notes. Roberts then read a portion of her notes into the record to impeach the testi-

mony of one of Higgins' alibi witnesses. Pursuant to I.R.E. 803(5), the reading of the notes into evidence would have been proper only after the trial court had admitted them. Higgins' counsel did not, however, object to Roberts' reading of the notes. Had Higgins' attorney objected, the trial judge would have been correct in ruling that the state had laid a proper foundation for the admission of the notes, and that Roberts could read the notes into the record even if they could not be received as a full exhibit unless offered by Higgins' attorney.

Our analysis of the prosecutor's allegedly improper statement during closing argument is slightly different. In *Sharp*, the Court explained the earlier decision in *State v. Spencer*, 74 Idaho 173, 258 P.2d 1147 (1953):

> *Spencer* did not hold that the failure to object to the closing arguments of a prosecuting attorney in a criminal case *may* not constitute a waiver of the objection. The *Spencer* exception to the general rule, however, contains limiting language. In *Spencer*, it was held that error will be preserved despite defendant's failure to object "where the record shows that the prosecuting attorney has been guilty of misconduct calculated to inflame the minds of jurors and arouse prejudice or passion against the accused by statements in his argument of the facts not proved by evidence ..." The rationale of *Spencer* was that a timely objection would not have cured the inherently prejudicial comments.

101 Idaho at 503, 616 P.2d at 1039 (emphasis in original).

■■■ In this case, Higgins challenges a statement in the prosecutor's closing argument regarding the condition of Higgins' back and his ability to carry the alleged victim downstairs to have intercourse with her. Higgins had earlier presented evidence that the poor condition of his back would have prevented him from carrying the alleged victim downstairs when her leg was broken, as she had testified. In his summation, the prosecutor stated:

Now, there have been some bad backs that have been talked about in this trial. Quite a lot. But, I'll submit to you that backs are bad for one reason, and good for another. Depending on the advantage that [Higgins] wanted in the case. Because, while in the spring of 1980 this bad back that was injured in 1972 very seriously and cost him all kinds of physical problems by—and couldn't carry [the victim] downstairs. So she must be a liar.

By—by the fall of 1980, just a few months later, that back had allowed him to [cut and stack wood.]

. . . .

Well, he could do this [cut and stack wood], but he couldn't carry [the victim] down the stair.

From our review of the record, we conclude that evidence presented at trial amply supports this statement in the prosecutor's closing argument. The statement was not "calculated to inflame the minds of jurors and arouse prejudice or passion against the accused by statements in [the prosecutor's] argument of the facts not proved by evidence." Even if Higgins' attorney had objected, the trial court could have correctly allowed the statement during closing argument.

## VIII.

## HIGGINS HAS NOT ESTABLISHED THAT THE PROSECUTOR IMPROPERLY COMMUNICATED WITH A JUROR.

■■■ Higgins asserts that during the second trial the prosecutor improperly communicated with a juror, thus denying Higgins a fair trial. We disagree.

The portion of the transcript dealing with this issue states that on July 31, 1987, the trial court recessed from 10:20 a.m. to 10:42 a.m., after which the following colloquy took place:

[PROSECUTOR]: Your Honor, I have a motion to reopen for brief testimony that was not covered in direct. I have discussed it with Mr. Parmenter [Higgins' attorney]. It has to do with a ques-

tion that was given to me at the break by Juror Number 3. And I've discussed it with Mr. Parmenter and I believe he has no objections.

> MR. PARMENTER: That's right,—
> THE COURT: Mr. Parmenter?
> MR. PARMENTER: No objection.
> THE COURT: You may reopen, sir.
> [PROSECUTOR]: Thank you.

Although Higgins' attorney did not object to the prosecutor's request to ask the question given to him by the juror, did not ask to inquire further about the circumstances concerning the contact between the juror and the prosecutor, and did not move for a mistrial, we address this issue because it goes to the foundation or basis of Higgins' right to a fair trial.

In *State v. Kenner*, 121 Idaho 594, 826 P.2d 1306 (1992), the Court stated the manner in which we consider whether an alleged error is fundamental:

> In order to determine whether we will consider an issue presented on appeal that was not presented to the trial court, we first must assess whether the error would be fundamental if there were error.

*Id.* at 597, 826 P.2d at 1309.

■ If there had been improper communication between the prosecutor and the juror, it would have been fundamental error for the trial court not to have taken corrective action. The right to a fair and impartial jury goes to the foundation of the right to a fair trial.

■ *State v. Chacon*, 36 Idaho 148, 209 P. 889 (1922), may seem to be at odds with this treatment of prosecutorial misconduct as fundamental error. In *Chacon*, the Court held that to preserve for appeal the propriety of the prosecutor making signs to a juror during the trial, the appellants needed to immediately call the alleged misconduct to the trial court's attention. *Id.* at 154, 209 P. at 891. *Chacon* preceded by almost half a century, however, the Court's first adoption of the fundamental error rule in *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). To the extent that

*Chacon* is contrary to our decision on this issue today, we overrule *Chacon.*

Addressing the issue of the alleged improper communication between the prosecutor and a juror, we find no error. The portion of the record quoted above containing the exchange concerning the question given to the prosecutor by the juror is the only evidence that the prosecutor had any contact with a juror. At most it indicates that "Juror Number 3" gave the prosecutor a question during a recess. The record does not indicate more about the circumstances of this contact, and we will not assume more than the record indicates. There is insufficient evidence in the record to show that the prosecutor's conduct denied Higgins' right to a fair trial.

IX.

## HIGGINS HAS FAILED TO ESTABLISH THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

Higgins asserts that his attorney in the second trial failed to provide him with effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution. We hold that Higgins has failed to make out a claim for ineffective assistance.

■ The United States Supreme Court has established that a defendant claiming ineffective assistance of counsel under the sixth amendment must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Moreover, the defendant must affirmatively prove prejudice, except where a court may presume prejudice where the defendant had no counsel at all, or where counsel had an actual conflict of

interest. *Id.* at 692–93, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

This Court has applied the *Strickland* standard in a number of ineffective assistance cases. *See, e.g., Storm v. State,* 112 Idaho 718, 720, 735 P.2d 1029, 1031 (1987); *Aragon v. State,* 114 Idaho 758, 760–61, 760 P.2d 1174, 1176–77 (1988); *McKinney v. State,* 115 Idaho 1125, 1126, 772 P.2d 1219, 1220 (1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3292, 111 L.Ed.2d 800 (1990); *State v. Charboneau,* 116 Idaho 129, 137, 774 P.2d 299, 307, *cert. denied,* 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267, and *cert. denied,* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989); *State v. Leavitt,* 116 Idaho 285, 291, 775 P.2d 599, 605, *cert. denied,* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989); *State v. Bingham,* 116 Idaho 415, 425, 776 P.2d 424, 434 (1989) (citing *Charboneau*); *State v. Youngblood,* 117 Idaho 160, 164–65, 786 P.2d 551, 555–56 (1990); *Parrott v. State,* 117 Idaho 272, 275, 787 P.2d 258, 261 (1990).

Higgins alleges that his trial counsel made the following errors during Higgins' representation: (1) counsel failed to object to the testimony of Carolyn Roberts and the allegedly improper use of her notes to impeach one of Higgins' witnesses, (2) counsel failed to object to a prejudicial remark in the prosecutor's closing argument; (3) counsel failed to object to the prosecutor's contact with a juror and the subsequent reopening of the victim's testimony, (4) counsel failed to secure a complete transcript from the first trial to prepare for the second trial, and (5) counsel failed to make a number of evidentiary objections during the testimony of the victim and the state's child abuse expert.

■ As for Higgins' claims regarding his attorney's failure to object to Roberts'

testimony and the prosecutor's allegedly improper statement during closing argument, we have already determined that the trial court could have properly allowed this evidence even if Higgins' counsel had objected. Thus, Higgins has failed even to show that his attorney's performance fell below an objective standard of reasonableness. Higgins cannot establish an ineffective assistance case on this basis.

■ Next, while Higgins claims that his attorney should have objected to the prosecutor's allegedly improper contact with a juror, we have already pointed out that the record is insufficient to establish that the prosecutor even made improper contact with a juror. The record is inconclusive as to whether the prosecutor discussed the case with a juror or whether a juror simply sent some kind of a message to the prosecutor or someone else. Higgins cannot establish that his attorney should have objected to something when the record does not demonstrate that anything objectionable occurred.

■ As we have stated above, Higgins' attorney apparently stipulated to receive only a partial transcript from the first trial. Higgins now asserts that this constituted ineffective assistance because the lack of a complete transcript prevented the defense from adequately preparing for the second trial. Higgins claims that his attorney could have used the transcript to make sure that the trial judge in the second trial kept his promise to follow the evidentiary rulings from the first trial. We have already determined that the trial court stated only that it would follow prior evidentiary rulings with respect to certain specific testimony of two witnesses. Even if the failure of Higgins' attorney to procure a complete transcript constituted deficient performance, Higgins has not shown how this prejudiced his defense. Higgins has the burden to show that his attorney's failure to procure a complete transcript undermined confidence in the outcome of Higgins' second trial. This he has not done.

■ Finally, Higgins claims that his trial counsel failed to make a number of

evidentiary objections during the testimony of the victim and the state's child abuse expert. While Higgins has compiled a rather lengthy list of alleged errors in failing to object, Higgins' argument stands unsupported by any evidence as to how proper objections would have, with a reasonable probability, changed the result of Higgins' trial. Moreover, many of trial counsel's alleged errors in failing to object involved evidence that was arguably admissible. Counsel's failure to object to the admission of this evidence may have reflected a conscious trial strategy to avoid frequent overrulings by the judge and annoyance of the jury. As the Ninth Circuit recently stated, "We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable representation." *Morris v. California,* 945 F.2d 1456, 1463 (9th Cir.1991), *petition for cert. filed,* 61 U.S.L.W. 3005 (U.S. June 8, 1992) (No. 91–2065).

This Court has held that arguably strategic judgments by trial counsel will not be disturbed unless found to be objectively unsound. *State v. Leavitt,* 116 Idaho at 291, 775 P.2d at 605 (citing *Strickland*). Higgins has not met his burden of proving that any of these alleged errors would have undermined confidence in his convictions. Our review of the record reveals that even if Higgins' attorney had successfully made all of the objections Higgins contends the attorney should have made, the jury would have had ample evidence to convict Higgins. *Cf. Featherstone v. Estelle,* 948 F.2d 1497, 1507 (9th Cir.1991) (despite counsel's failure to make proper objections, substantial amount of other independent evidence pointed squarely at defendant's guilt). Therefore, we reject Higgins' ineffective assistance claim.

## X.

HIGGINS WAIVED HIS RIGHT TO A SPEEDY TRIAL WHEN HIS ATTORNEY ASKED FOR A CONTINUANCE TO PREPARE FOR THE SECOND TRIAL.

Following Higgins' first trial, which ended November 1, 1986, the trial court set his second trial for April 1987. Thereafter, Higgins' attorney moved for a continuance, and Higgins' second trial did not begin until July 1987. Higgins contends that I.C. § 19–3501 requires the state to try a criminal defendant within six months after the state brings charges against the defendant, and that the trial court's granting of Higgins' own motion for a continuance denied Higgins of his right to a speedy trial. We disagree.

Higgins argues that he did not authorize his attorney to request a continuance, and that Higgins must have personally appeared before the court to expressly consent to a continuance. In support of this argument, Higgins cites *State v. Stuart,* 113 Idaho 494, 745 P.2d 1115 (Ct.App.1987). In *Stuart,* the Court of Appeals reversed the defendant's conviction because she did not receive a speedy trial. Defense counsel in *Stuart* did not make a motion for a continuance. Therefore, *Stuart* is not applicable to this case.

Higgins' attorney filed a motion for continuance on behalf of Higgins and the trial court granted the continuance. Where a trial is postponed upon application of the defendant, the six-month deadline in I.C. § 19–3501 is not applicable. *State v. Kysar,* 116 Idaho 992, 783 P.2d 859 (1989). We can find no reference in the record indicating that Higgins wished to proceed to trial in April 1987 in spite of the motion for continuance filed by his attorney. Thus, we conclude that Higgins waived his right to a speedy trial.

## XI.

THE TRIAL COURT PROPERLY DENIED HIGGINS' MOTION FOR NEW TRIAL; THE CUMULATIVE ERROR DOCTRINE DOES NOT APPLY.

Higgins moved for a new trial on three grounds: (1) the improper testimony of the state's child abuse expert, (2) the failure of the state to disclose the video tapes, and (3) the trial court's failure to follow the evidentiary rulings from the first trial.

We have ruled above that Higgins' I.R.E. 404 argument in support of the motion for new trial did not preserve the issue in the face of a failure to object to the evidence at trial. Therefore, the trial court did not have any basis to grant a new trial on this ground.

We have also ruled above that the trial judge did not promise but fail to follow the evidentiary rulings from the first trial, and that the prosecution's failure to disclose the video tape did not deny Higgins' right to a fair trial. Accordingly, the trial court properly denied Higgins' motion for new trial on these grounds.

Higgins also asks this Court to grant a new trial based on the cumulative error doctrine. Because we find no error in this case that was preserved for appeal, we conclude that the cumulative error doctrine does not apply.

### XII.

### CONCLUSION.

We affirm Higgins' convictions for lewd conduct, rape, and incest, and the denial of his motion for new trial.

BAKES, C.J., BISTLINE and McDEVITT, JJ., and REINHARDT, J. Pro Tem., concur.