900 P.2d 1381

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles W. SEITTER, Defendant– Appellant.**

No. 20516.

Court of Appeals of Idaho.

Sept. 6, 1994.

Appeal Decided, See: 127 Idaho 356, 900 P.2d 1367.

Stanton P. Rines, Jr., Kendrick, argued, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent. Douglas A. Werth argued.

WALTERS, Chief Judge.

A jury found Charles Seitter guilty of possessing a controlled substance (methamphetamine) with intent to deliver and of failing to affix a controlled substance tax stamp. *See* I.C. §§ 37–2732(a)(1)(A); 63–4205; and 63–4207. The state proved to the jury that Seitter constructively possessed the drugs that were found in a bedroom to which Seitter shared access with other people. On appeal, he asserts that the district court erred when it admitted into evidence several items found in the room, that the jury was erroneously instructed, and that the evidence did not support the verdict. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Seitter is described in the appellant's brief as the president of the Hiwaymen [sic] Motorcycle Club, Inc. He is listed in the club's Idaho incorporation papers as the vice-president and registered agent, with a mailing address at the clubhouse located on Hatwai Road in Lewiston. The clubhouse was a ramshackle two bedroom building which the police searched pursuant to a warrant. No occupants were present when the search was performed. In a bedroom closet the police found sixteen grams of methamphetamine on a beam scale. The personal items in the room convinced the police that the room, and therefore the methamphetamine, belonged to Seitter. He was arrested, charged, and convicted as noted above.

At trial, the state's case consisted entirely of circumstantial evidence offered to establish that the bedroom belonged to Seitter, and that he constructively possessed the methamphetamine found within. Seitter filed a motion in limine to exclude, among other items, the methamphetamine and several loaded firearms found in the room. The motion was denied with respect to these latter items, but granted regarding others. At the end of the state's case in chief, Seitter moved for judgment of acquittal. The mo-

tion was denied. The defense chose not to present any witnesses. The jury found Seitter guilty. He moved for a new trial, which was denied. His sentence was suspended, and he was placed on probation. Seitter timely appealed from the judgment of conviction.

## II.

### EVIDENTIARY RULINGS

#### A. NON–CONTROLLED SUBSTANCES

The first issue we address is whether the district court erred when it admitted into evidence exhibits 15 and 16. These exhibits were two baggies of unidentified white powder which the state in its closing argument to the jury implied were a drug-cutting agent called "inositol," but which were not tested or proved to be anything in particular. The only tests performed on the powders produced a limited result. The tests showed only that the powders were not a controlled substance. At trial, Seitter objected that the exhibits were irrelevant. On appeal, he asserts that they were irrelevant and that they were introduced without foundation. The state asserts that the exhibits were relevant because their location in the bedroom tended to make it more probable than not that Seitter possessed the room and the methamphetamine found in the closet. The state further submits, as it did in the closing argument to the jury, that the powders in these exhibits may have been a cutting agent which would support the state's theory that Seitter possessed methamphetamine with the intent to deliver because he could have increased the deliverable quantity of controlled substance through dilution. Seitter counters that the prosecutor's argument to the jury was an improper invitation to speculate as to the nature of the powders and was not based upon any other evidence before the jury. However, no objection to the prosecutor's statement in this regard appears in the record. Consequently, the propriety of the prosecutor's argument has not been preserved as an issue. See State v. Higgins, 122 Idaho 590, 836 P.2d 536 (1992).

We review the admission of the evidence on the grounds stated for objection at trial. See I.R.E. 103; State v. Enyeart, 123 Idaho 452, 454, 849 P.2d 125, 127 (1993). Therefore, we examine whether exhibits 15 and 16 were relevant, and will disregard the new claim that the foundation was insufficient. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than the existence of the fact would be without the evidence. I.R.E. 401. Relevance is a question of law over which we exercise free review. State v. Raudebaugh, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

The exhibits were not relevant. The contents of the bags were identified only to the extent that the bags did not contain controlled substances. No tests to determine the true chemical composition of the powders were requested or performed by either party. As Seitter suggests, the bags could have contained powdered tattoo ink or epsom salts. Because the powders in the bags was unidentified, no connection to Seitter was established. Further, no other connecting information, such as fingerprints, was offered to indicate Seitter's control of the bags. The exhibits did not tend to prove, or disprove, that Seitter possessed the methamphetamine found in the closet.

However, the erroneous admission of exhibits 15 and 16 did not effect Seitter's substantial rights and therefore was harmless. See I.R.E. 103. The exhibits were not important pieces of evidence. Their dubious identity—and connection to Seitter—were bungled by the state and discredited on cross-examination. Moreover, their impact on the jury was eclipsed by the other evidence presented by the state to show that the bedroom and the methamphetamine belonged to Seitter. A large sign with Seitter's name adorned a prominent place on the wall above the desk located near the door. A plaque celebrating the thirtieth anniversary of the motorcycle club, with Seitter's name on the bottom, sat on the nightstand next to

the bed. Also on the nightstand was Seitter's 9mm semi-automatic Browning pistol. Seitter was known as a tattoo artist and reportedly did a lot of tattooing at the clubhouse. Above the desk hung a locking cabinet in which was found Seitter's tattooing equipment. The Hiwaymen's certificate of incorporation and related papers bearing Seitter's name were found in the two-drawer filing cabinet that sat under the right side of the top of the desk. In the top left-hand desk drawer the police found a paper bag containing an address book and miscellaneous papers, Seitter's Washington driver's license, a traffic citation issued to Seitter in Asotin County, Washington, and a business card from a Lewiston police officer who testified that he had previously given the card to Seitter. A pawn slip with Seitter's name written on the back was also found in the drawer. Several other letters, bills, and traffic tickets were found on or in the desk or the filing cabinet, bearing Seitter's name and the clubhouse mailing address. Some items were addressed to Seitter in Clarkston, Washington, indicating that he had brought them to the clubhouse and was storing them in the room. A list of guns, purportedly written by Seitter and bearing his fingerprints, was found in the filing cabinet under the desk. Loaded firearms were found on the nightstand, in the closet, and in the cabinet above the desk. A police officer testified that Seitter had stated that all of the weapons were his. Mr. Jackson, a friend of Seitter's who periodically stayed at the clubhouse, testified that he stayed in the bedroom in question only with Seitter's permission. Forty-six small plastic empty baggies of the size and type police testified were often used to package drugs for sale were found in the room. Approximately four or five of these baggies were found on the beam scale with the methamphetamine; approximately ten to twelve were found in the upper left-hand drawer of the desk; and approximately thirty were found in a hard-sided overnight case located on top of the locking cabinet where Seitter kept his tattoo equipment. These latter items were relevant to the issue of whether the controlled substance was possessed with an intent to deliver.

The state's failure to identify the powder in exhibits 15 and 16 rendered the exhibits useless. However, that same uselessness rendered their admission harmless.

## B. FIREARMS

Seitter's next assertion is that the district court erred when it admitted into evidence three loaded firearms found in the bedroom: exhibit 28, a M–1 rifle found in the closet; exhibit 29, a Browning 9mm semi-automatic pistol found on the nightstand next to the bed; and exhibit 30, a Beretta .22 caliber semi-automatic pistol found in the cabinet above the desk. At trial, Seitter objected that these exhibits were irrelevant. This objection appears not to have been continued on appeal. Seitter argues to this Court that the firearms "though relevant under I.R.E. 401, should have been excluded under I.R.E. 403, because the evidence was merely cumulative to the other evidence." Seitter also asserts that it was wrong for the state to imply during closing argument that the presence of the loaded firearms, allegedly to protect three different locations in the room, made Seitter a bad person.

Seitter appears to have conceded that the firearms were relevant. We agree. Their presence in the bedroom reflected his control and use of the premises. A handwritten list of firearms was found in the room, and the Browning pistol bore a serial number identical to that on the list. Seitter's fingerprints were on the list. A police officer also testified that Seitter had admitted that the firearms were his.

Seitter's objections below did not include the assertion that the firearms constituted cumulative evidence. Therefore, we need not consider the argument on appeal. *See* I.R.E. 103; *Enyeart*, 123 Idaho at 454, 849 P.2d at 127. However, it is interesting to note that his argument is based on his conclusion that the evidence put on by the state that Seitter kept his belongings in the room was "extensive," "enormous," and "abundant without the firearms." This seems to contradict Seitter's assertion that the evidence was insuffi-

cient to show his occupation and control of the room.

Seitter also asserts that I.R.E. 404 was violated when the state asserted during closing argument that the loaded guns were present to protect three different locations in the bedroom, and implied that this made Seitter a bad person. Seitter did not object to the state's implication, therefore we need not consider the objection on appeal. *See State v. Higgins, supra,* 122 Idaho at 596–97, 836 P.2d at 542–43.

## III.

## JURY INSTRUCTIONS

 Next, Seitter asserts that the district court erred when it refused to give his requested jury instruction regarding non-exclusive possession of the building. When reviewing jury instructions, we ask whether the instructions as a whole, not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, .942, 866 P.2d 193, 199 (Ct.App.1993).

Instruction No. 21 was the only instruction the district court gave that addressed constructive possession. It stated:

Possession of a controlled substance need not be actual physical possession. It may be constructive possession. In order to prove constructive possession, the State must establish that the defendant had knowledge of the controlled substance, and that the defendant had control over the premises where it was found.

Seitter acknowledges that this instruction is an accurate statement of the law as expressed in *State v. Randles,* 117 Idaho 344, 787 P.2d 1152 (1990). However, he avers that it is incomplete and that his own Instruction No. 3 should have been given to cure the alleged deficiency. Seitter's proposed instruction stated:

When the defendant is in non-exclusive possession of the premises where controlled substances are found, knowledge of

the controlled substances may not be proven by inference unless there are other circumstances which would support that inference of knowledge.

The latter part of this instruction is a direct quote from *Randles.* It was properly rejected by the district court because it would not have helped the jury. It merely states, in obfuscating doublespeak, the rule expressed more clearly in *State v. Clayton,* 101 Idaho 15, 16, 607 P.2d 1069, 1070 (1980): that knowledge of the existence of controlled substances may be inferred through circumstances.

We observe that *Randles* deserves clarification because its statement of the rule signals a departure from previous Idaho cases. *Randles* cites *State v. Segovia,* 93 Idaho 594, 468 P.2d 660 (1970), for the proposition that the state must establish that the defendant knew of the controlled substance and had control over the *premises* where the substance was found. *Segovia* did not require that control of the premises must be established. Rather, control had to be over the *illegal substance:*

A defendant need not have actual physical possession of marijuana to sustain a conviction for possession of it, but the state need only prove that he has such dominion and control over it [the marijuana] to establish constructive possession.

*Segovia,* 93 Idaho at 598, 468 P.2d at 664.

*Randles* cites two cases besides *Segovia* for the rule of constructive possession: *White v. United States,* 315 F.2d 113 (9th Cir.1963) and *United States v. Warren,* 594 F.2d 1046 (5th Cir.1979). *White* requires that control must be over the controlled substance. *White,* 315 F.2d at 115. *Warren* states that constructive possession can be established by showing dominion and control over the controlled substance *or* the premises. *Warren,* 594 F.2d at 1050. With either approach, "what is crucial to the state's proof is a sufficient showing of a nexus between the accused and the controlled substance." *State v. Fairchild,* 121 Idaho 960, 969, 829 P.2d 550, 559 (Ct.App.1992). The most accu-

rate statement of the rule appears to be that "it is not a crime to have dominion and control over the premises where the substance is found." *State v. Olivarez*, 63 Wash. App. 484, 820 P.2d 66, 68 (Wash.App.1991). Otherwise, every person who owned property on which controlled substances were found would have been guilty of possession of the substances. Rather, dominion and control over the premises is "one of the circumstances from which constructive possession [of the controlled substance] may be inferred." *Id.*

Our examination of *Randles* does not alter our conclusion that the jury was properly instructed. The error alleged by Seitter involves the "knowledge" aspect of the rule of constructive possession. The inconsistency in *Randles* involves the "dominion and control" aspect of the rule. We uphold the district court's decision not to give Seitter's proposed Instruction No. 3.

## IV.

### THE VERDICT

 Finally, we address Seitter's assertion that the evidence does not support the jury's verdict. Whether a defendant has constructively possessed a controlled substance is generally left for the trier of fact to determine. *Segovia*, 93 Idaho at 598, 468 P.2d at 664. We will not set aside a judgment of conviction entered upon a jury verdict if there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Burnside*, 115 Idaho 882, 771 P.2d 546 (Ct.App.1989). We review the evidence in the light most favorable to the respondent, and are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence. *Burnside*, 115 Idaho at 885, 771 P.2d at 549.

The state sought to establish that Seitter knew of the methamphetamine and exercised control over it through his control of the bedroom. The state's case focused on convincing the jury to draw overlapping inferences of knowledge and control from the circumstantial evidence. Reviewing the evidence in the state's favor, we conclude that there was sufficient evidence to support the inferences drawn by the jury.

Friends of Seitter testified that he personally used methamphetamine. The only place drugs were found in the clubhouse was in the closet in the bedroom filled with Seitter's belongings. He attempted to drive away when he arrived at the clubhouse and saw that a search was being conducted. He was an officer and the agent for the Hiwaymen and controlled the activities at the clubhouse: police officers testified that he approached them on previous occasions as the contact person for the group. He often resided at the clubhouse and received personal mail there and kept it in the bedroom, along with mail he had brought from Clarkston, Washington. His name adorned a large plaque on the wall and a photo or plaque on the nightstand. He controlled access to the bedroom and allowed others to sleep there with his permission. He protected the room with three loaded firearms placed in strategic locations. He admitted to a police officer that the firearms were his. He kept his tattooing equipment in the room, along with a list of guns, his Washington driver's license, and other legal and personal communications. Small plastic baggies similar to those frequently used to package methamphetamine for sale were found in the closet and with Seitter's belongings elsewhere in the bedroom. The methamphetamine was found on a beam scale, an item often used to measure drugs for sale. The amount of methamphetamine found—just over half an ounce—exceeded the amount police testified was usually kept for personal use but was consistent with an amount intended for sale. Taken together, these facts were sufficient to support the inferences that Seitter knew of the methamphetamine and exercised dominion and control over it by occupying and controlling the room.

## V.

### CONCLUSION

The two baggies of unidentified non-controlled substances were irrelevant to show constructive possession of the methamphetamine found in the bedroom closet, but their admission into evidence was harmless. The three loaded firearms found in the room were relevant and were properly admitted. The jury was adequately instructed and the evidence supports the verdict. The judgment of conviction is affirmed.

LANSING, J., and SWANSTROM, J. Pro Tem., concur.